*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 52**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ZACHARY BRYNER, NENITA R. EZAR,
MICHELLE GALLAGHER, and CHRISTOPHER FURR,
*Appellants,*

*v.*

CARDON OUTREACH, LLC, IHC HEALTH SERVICES, INC.,
ST. MARK'S HOSPITAL, UNIVERSITY OF UTAH HEALTH
CARE, and STATE OF UTAH,
*Appellees.*

No. 20160818
Filed September 24, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Barry G. Lawrence
No. 150903753

Attorneys:

Robert B. Sykes, Alyson Carter McAllister, Daniel Oswald, Salt
Lake City, for appellants

Gregory John Wilder, Provo, for appellant Nenita R. Ezar

Sean D. Reyes, Att'y Gen., Peggy Stone, Asst. Sol. Gen., Salt Lake
City, for appellees University of Utah Health Care and State of Utah

Derek J. Williams, P. Matthew Cox, Nathaniel J. Mitchell, Salt Lake
City, for appellee Cardon Outreach, LLC

Alan C. Bradshaw, Steven C. Bednar, Salt Lake City, for appellee
IHC Health Services, Inc.

Andrew G. Deiss, Billie Jean Siddoway, Salt Lake City, Sean
Gallagher, Denver, CO, for appellee St. Mark's Hospital

JUSTICE HIMONAS authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

---

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1    The question before us is not a particularly thorny one: what is the correct interpretation of Utah's Hospital Lien Statute? *See* UTAH CODE § 38-7-1. Recognizing that this question is purely one of law, the parties sensibly agreed to stay discovery and filed cross-motions for summary judgment at the outset of the case.

¶2    The plaintiffs[1] argued that the Hospital Lien Statute "requires a hospital to pay its proportional share of an injured person's attorney fees and costs when a hospital lien is paid due to the efforts of the injured person or his or her attorney." The defendants[2] countered that the statute contains no such language, and that the statute operates instead "to establish a priority system as to entitlement to settlement funds to allow hospitals to get paid."

¶3    The district court concluded that the hospitals' interpretation was correct, as it was "the only *reasonable* [interpretation] that ma[de] sense given the context of the statute read as a whole." More specifically, the district court granted summary judgment to the hospitals, finding that "even giving [the] [patients] the benefit of the doubt concerning . . . [their] tortured (albeit possible) interpretation of Subsection (1)(a), . . . [o]nly [the hospitals'] interpretation reconciles the [Hospital Lien] [S]tatute *as a*

---

[1] The named plaintiffs in this proposed class action are all persons who were involved in car accidents, received medical care at one or more of the healthcare institutions named in this suit, and filed personal injury claims against the third parties at fault for the accidents. We refer to the plaintiffs as the patients throughout the remainder of this opinion.

[2] We refer to the defendants as the hospitals. We recognize, however, that the Cardon defendants are not healthcare providers. We further recognize that although the patients named MountainStar Healthcare as a defendant in this appeal, the district court dismissed it as a party for lack of jurisdiction, and that dismissal has not been challenged in this appeal.

*whole.*" The patients appealed. We are in full agreement with the district court's conclusions and therefore affirm the grant of summary judgment.

## BACKGROUND

¶4    Because the parties have stipulated that the focal issue in this case is the interpretation of the Hospital Lien Statute, the facts in this matter are not at issue. This proposed class action involves persons injured in car accidents who filed personal injury claims against the third parties at fault. All had hospital liens placed on any potential recovery from those claims, and all reached settlement agreements, paying their attorney fees by way of a contingent fee on the recovery. In each case, the patient used the settlement proceeds to pay attorney fees and associated costs and then the entirety of the asserted hospital lien, retaining the remaining balance, if any.

¶5    The patients contend that the hospitals failed to pay their "fair share" of the attorney fees (including court costs and other necessary expenses) the patients incurred in generating the settlement proceeds. And they further contend that, under the Hospital Lien Statute, the hospitals should be required to reimburse them for the proportion of those attorney fees that the hospitals should have been required to pay in order to equitably share the costs of obtaining the settlement proceeds.[3] The district court disagreed with the patients' interpretation of the statute and granted summary judgment to the hospitals. We agree with the district court that the reading of the plain language of the statute as a whole yields the hospitals' interpretation and find that the language is not ambiguous. But even if the language were ambiguous, the substantive terms canon would negate the patients'

---

[3] The patients also contend that the statute is unconstitutional because the supreme court has the exclusive authority to regulate attorney fees. However, "[b]y waiting until the reply brief to raise the constitutional question, [the patients] failed to carry [their] burden of identifying grounds for challenging the decision before us on review." *State v. Garcia*, 2018 UT 3, ¶ 24, 416 P.3d 1118. Waiting until the reply brief to bring an argument also "deprive[s] the [other party] of the opportunity to address this question in its briefing on appeal." *Id.* "That [is] fatal to [their] attempt to raise this issue for our consideration." *Id.*

interpretation. We also conclude that the common fund doctrine offers the patients no relief.

¶6 We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶7 "A district court's interpretation of a statute is a question of law, which we . . . review for correctness." *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256. "We review a district court's grant of summary judgment for correctness. We affirm a grant of summary judgment when the record shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (footnote omitted) (quoting UTAH R. CIV. P. 56(c)).

**ANALYSIS**

¶8 The Hospital Lien Statute authorizes hospitals that treat persons injured in accidents to file liens on the personal injury claims arising out of those accidents. *See* UTAH CODE § 38-7-1. The parties disagree about the effect of the Hospital Lien Statute in allocating the attorney fees and costs of the personal injury litigation. In particular, the parties disagree about the meaning of subsections 1(a) and 1(b) of the statute. These subsections state

> (1) (a) Except as provided in Subsection (3), a hospital located within the state that furnishes emergency, medical, or other service to a patient injured by reason of an accident is entitled to assert a lien upon that portion of the judgment, settlement, or compromise going or belonging to the patient, or, in the case of death, to the patient's heirs or personal representatives, less the amount paid by the patient, or on behalf of the patient by heirs or personal representatives, for attorney fees, court costs, and other necessary expenses incidental to obtaining the judgment, settlement, or compromise.
>
> (b) No reduction of the asserted lien amount is allowed other than the amount paid by the patient, or the patient's heirs, or personal representatives for attorney fees, court costs, and other necessary expenses incidental to

4

litigation, unless otherwise agreed to in writing
by the lien claimant.

*Id.* § 38-7-1(1).

## I. STATUTORY INTERPRETATION

¶9 "Our goal when confronted with questions of statutory interpretation is to evince the true intent and purpose of the Legislature. It is axiomatic that the best evidence of legislative intent is the plain language of the statute itself." *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (citations omitted) (internal quotation marks omitted), *superseded on other grounds by statute* UTAH CODE § 20A-9-502. The first step of statutory interpretation is to look to the plain language, and "[w]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language" *Garrard v. Gateway Fin. Servs., Inc.*, 2009 UT 22, ¶ 11, 207 P.3d 1227 (citation omitted).

¶10 Additionally, "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 (citation omitted) (internal quotation marks omitted). If, after conducting this plain language review we are left with competing reasonable interpretations, there is statutory ambiguity. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (Noting that statutory language is ambiguous if "its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis"). However, "a statute susceptible to competing interpretations may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible." *Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 60, 131 P.3d 208 (Parrish, J., concurring).

¶11 In this statute, there is no ambiguity. The district court correctly decided that although each party offers a different *possible* interpretation of the Hospital Lien Statute, only one interpretation is *plausible* given the text of the act as a whole. Only the hospitals' interpretation makes sense on its face under the ordinary meaning of the words as used in the statute *and* harmonizes the language in subsections 1(a) and 1(b) of the statute. Thus, finding no ambiguity, we determine the statute's meaning by its plain language.

*A. The Whole-Text Canon and the Grammatical
Structure of Subsection (1)*

¶12  "[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012). "Often, statutory text may not be plain when read in isolation, but may become so in light of its linguistic, structural, and statutory context. The reverse is equally true: words or phrases may appear unambiguous when read in isolation, but become ambiguous when read in context." *State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92 (citation omitted) (internal quotation marks omitted).

¶13 Read as a whole, Utah Code section 38-7-1(1) creates a priority for the distribution of the "judgment, settlement, or compromise going or belonging to the patient." *Id.* § 38-7-1(1)(a). [4] The judgment is first used to pay "attorney fees, court costs, and other necessary expenses"[5] accrued in obtaining the judgment. *Id.* Subsection 1(a) allows a hospital to assert a lien on the remaining amount of the judgment to obtain payment for medical expenses incurred in treating the patient as a result of the action being litigated (provided that the amount is greater than $100). *Id.* § 38-7-1(1)(a), (c). Subsection 1(b) establishes that the hospital has priority over any other creditor or the patient to the entirety of the net judgment (total judgment less attorney fees) up to its asserted lien unless expressly agreed to by the hospital. *Id.* § 38-7-1(1)(b) ("No reduction of the asserted lien amount is allowed other than the amount paid . . . for attorney fees . . . unless otherwise agreed to in writing by the lien claimant."). In other words, the total amount of the judgment "going or belonging to the patient"[6] is first used to

---

[4] For simplicity, we refer to "judgment, settlement, or compromise" as "judgment" through the remainder of this opinion.

[5] We will refer to "attorney fees, court costs, and other necessary expenses" collectively as "attorney fees."

[6] If there is more than one injured party and only one judgment (e.g., a settlement up to the liable party's policy limits), the total amount of the judgment "going to or belonging to the patient" is the actual amount awarded to the individual patient, not the entire settlement awarded to all patients.

pay or reimburse attorney fees, with the net judgment becoming available to cover the entirety of the hospital lien. Any remaining funds go to other lien holders, if they exist, and then the patient receives the final amount.

¶14 The relevant portion for purposes of a grammatical analysis of the syntax of subsection 1(a) is as follows: "a hospital . . . is entitled to assert a lien upon that portion of the judgment . . . going or belonging to the patient . . . less the amount paid by the patient for attorney fees . . . incidental to obtaining the judgment."[7] Although this sentence is complex, each modifying phrase can be traced to its nearest reasonable referent. "[A] prepositive or postpositive modifier normally applies only to the nearest reasonable referent." SCALIA & GARNER, *supra*, at 152.

¶15 The basic elements of the sentence in subsection 1(a) are the subject ("a hospital"), the verb ("is entitled"), and the direct object—an infinitive phrase ("to assert a lien") with its postmodifier.[8] This postmodifier is a prepositional phrase ("upon that portion of the judgment . . . going or belonging to the patient . . . less the amount paid by the patient. . . for attorney fees . . . incidental to obtaining the judgment").

¶16 The preposition[9] "upon"[10] indicates that the object of the preposition, a clause beginning with a relative pronoun and a noun,

---

[7] In its entirety, this section reads

> Except as provided in Subsection (3), a hospital located within the state that furnishes emergency, medical, or other service to a patient injured by reason of an accident is entitled to assert a lien upon that portion of the judgment, settlement, or compromise going or belonging to the patient, or, in the case of death, to the patient's heirs or personal representatives, less the amount paid by the patient, or on behalf of the patient by heirs or personal representatives, for attorney fees, court costs, and other necessary expenses incidental to obtaining the judgment, settlement, or compromise.

UTAH CODE § 38-7-1(1)(a).

[8] Postmodifiers give specific information about the noun they follow: in this case "lien."

[9] Prepositions are syntactically complex.

"that portion," will be the source *on* which the lien may be asserted—some portion yet to be defined. In order for the sentence to make sense, "that portion" must be defined, so the sentence requires a complement to "that portion." The complement clarifies what is meant by "that portion." In this sentence, the complement is "of the judgment going or belonging to the patient."[11] The

---

> Prepositions belong to the functional and closed-class categories of words, as opposed to the lexical and open-class, and their basic grammatical role is to introduce nouns. Flexible in where they can position and versatile in how they function, they also express the relationship between words and phrases, and they can do so either obligatorily or freely. Because of their flexibility and versatility, prepositions exhibit 'diverse grammatical behavior,' which can be problematic at times.

Justin Bruce Petersen, Syntactic Cartography as a Forensic Linguistics Tool: A Retrospective Analysis of Prepositional Phrases in Two Appellate Court Cases (May 2017) (unpublished M.A. thesis, Arizona State University), https://repository.asu.edu/attach ments/186518/content/Petersen_asu_0010N_17032.pdf (citations omitted).

[10] As used here, "upon" is simply a euphonic version of the preposition "on."

[11] The patients incorrectly argue that because an attorney fee lien attaches to the judgment before the judgment is reached, the patient does not "own" the portion of the judgment that pays the attorney fees. This is mistaken. Initially, the entire judgment belongs to the patient. "While a lien creates a security interest in property, a lien right alone does not give the lienholder right and title to property; instead, . . . the legal right to control and dispose of property, remains with the property owner until the lien is enforced." 51 Am. Jur. 2d *Liens* § 2 (2018); *see also Comm'r v. Banks*, 543 U.S. 426, 436 (2005) ("The attorney is an agent who is dutybound to act only in the interests of the principal, and so it is appropriate to treat the full amount of the recovery as income to the principal."); *id.* at 435 ("In the case of a litigation recovery the income-generating asset is the cause of action derived from the plaintiff's legal injury. The plaintiff retains dominion over this asset throughout the litigation.").

complement is also followed by a postmodifier, "less the amount paid by the patient . . . for attorney fees . . . incidental to obtaining the judgment."[12] Postmodifiers usually come after a complement in a noun clause, and refer back to the head noun ("portion") in the clause. So both the complement and the postmodifier refer back to the noun "portion."

¶17 The prepositional phrase, "less attorney fees,"[13] acts, along with its postmodifiers, as a postmodifier in this sentence. As used here, "less" is a preposition meaning minus or without. It also modifies its nearest reasonable referent (the noun the complement finishes defining), "portion." Its function is to specify or clarify that the funds available on which the hospital may assert its lien do not include the portion of the judgment used to pay attorney fees. In other words, the complement and the postmodifier clarify that the lien can be asserted on the entirety of the judgment that belongs to the patient after subtracting the attorney fees. So, the lien may be asserted on the patient's entire judgment after attorney fees are subtracted.

¶18 When read in conjunction with subsection 1(a), subsection 1(b) is a clear legislative statement that "[n]o reduction of the asserted lien amount [defined in subsection 1(a)] is allowed" except for the attorney fees reduction as described in subsection 1(a). UTAH CODE § 38-7-1(b). In other words, the hospital's lien has priority over any other lien holder and the patient once the attorney fees have been paid. These two subsections work in harmony to create a priority for the enforcement of liens on the judgment. First, the attorney's lien[14] is enforceable (and any paid attorney fees are reimbursed), next the hospital's lien is enforceable up to the

---

[12] The patients' argument that less modifies "lien" and not "portion" not only defies common sense, but also the rules of syntax. The prepositional phrase beginning with "less" is used here to explain what portion the lien may be placed on.

[13] The clause "the amount paid by the patient . . . for attorney fees" is also simplified to "attorney fees" for brevity and clarity, since we have established that the attorney fees come from the full amount of the judgment and are therefore paid by the patient.

[14] An attorney has "a lien for the balance of compensation due from a client" that "commences at the time of employment of the attorney by the client." UTAH CODE § 38-2-7(2), (3).

remaining amount of the judgment, and then any proceeds remaining are subject to other liens (such as insurance subrogation) and may be used as compensation to the victim. Section 1(b) makes clear that *no other* reduction from the judgment is allowed with the exception of attorney fees until the hospital is able to enforce its asserted lien. This interpretation is the only one *plausible* under the text of the act as a whole, rendering the statute unambiguous. *See Utah Pub. Emps. Ass'n*, 2006 UT 9, ¶ 60 (Parrish, J., concurring).

## B. The Substantive Terms Canon

¶19 But even if this statute were ambiguous, the patients' argument would falter for an additional reason; the patients' interpretation would violate our substantive terms canon.[15]

¶20 The patients' argument that we adopt proportional sharing as other states have done[16] does not survive the substantive terms canon. Under that canon of construction, "[w]hen construing the language of a statutory provision, [w]e presume that the legislature used each word advisedly." *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (second alteration in original) (citation omitted) (internal quotation marks omitted).

¶21 Nothing in the language of the Hospital Lien Statute allows for assessing the hospitals with a "proportional share" of the attorney fees. The patients' reading of the statute to incorporate proportional sharing does not comport with the language in the statute; in fact, substantive terms must be added to read it as

---

[15] Scalia and Gardner refer to this canon as the Omitted-Case Canon: "Nothing is to be added to what the text states or reasonably implies . . . . That is, a matter not covered is to be treated as not covered." ANTONIN SCALIA & BRYAN A GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012). ("Whatever temptations the statesmanship of policymaking might wisely suggest, construction must eschew interpolation and evisceration. [The judge] must not read in by way of creation." (*quoting* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 533 (1947))).

[16] *See, e.g., In re Bloomquist*, 523 N.W.2d 352, 361 (Neb. 1994) (Holding "that hospitals are liable for their pro rata portion of the legal expenses and costs where they seek payment out of a judgment or settlement for the amount of a lien filed pursuant to [the Nebraska hospital lien statute]").

assessing hospitals for a portion of the attorney fees. This goes four square against our case law. "We will not infer substantive terms into the text that are not already there. Rather the interpretation must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed." *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928 (alteration in original) (citation omitted) (internal quotation marks omitted); *see also Trittipo v. O'Brien,* 561 N.E.2d 1201, 1203 (Ill. App. Ct. 1990) ("The statute should be interpreted on the basis of what was written, and courts should not search for any subtle or not readily apparent intention of the legislature."). In short, where the legislature has not indicated an intention to enact an unprecedented legal requirement, we will not alter the statutory terms to surmise one. Accordingly, we reject the patients' notion of proportional fee sharing.

### C. Common Fund Doctrine

¶22 Perhaps, recognizing that support for their position cannot be found in the language of the statute, the patients have presented us with a reading of the statute that would incorporate a proportional sharing requirement. They have also tried to invoke a public policy argument in the form of the common fund doctrine[17] as support to bolster their request for a remedy where hospitals pay a proportional share of attorney fees in personal injury litigation cases "when a hospital lien is paid due to the efforts of [an] injured person's attorney." However, in the present case, the common fund doctrine is not appropriate. We have not held that the common fund doctrine applies to cases with enforceable liens of a creditor on a judgment awarded to the debtor and the legislature has not incorporated this doctrine into the statute.

---

[17] Under the common fund doctrine, a litigant who creates, increases, or preserves a fund to which others may have a claim is entitled to attorney fees and costs from that fund. The common fund doctrine allows courts to "award attorney fees in common fund cases to avoid the unjust enrichment of those who benefit from the fund that is created . . . by the litigation and who otherwise would bear none of the litigation costs." *Barker v. Utah Pub. Serv. Comm'n*, 970 P.2d 702, 708 (Utah 1998) (alteration in original) (citation omitted) (internal quotation marks omitted).

¶23 Likewise, the patients' argument that the doctrine would avoid unjust enrichment because the hospitals "otherwise would bear none of the litigation costs" is inapposite. The relationship between a hospital and a patient is generally a contractual one—either expressed through signing the forms upon admission and consenting to treatment or implied through receiving emergency treatment even without signing the forms. *See Emergency Physicians Integrated Care v. Salt Lake Cty.*, 2007 UT 72, ¶ 28, 167 P.3d 1080, 1086 (holding that *quantum meruit* is an equitable tool that allows hospitals to recover for the services it rendered to patients as a result of being statutorily obligated to treat them under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (2000)).

¶24 "The existence of a claim, or right to payment, is at the heart of the debtor-creditor relationship." *Porenta v. Porenta*, 2017 UT 78, ¶ 12, 416 P.3d 487. When hospitals have provided medical services to patients in accordance with the law, they are entitled to payment from the patients. This establishes a debtor-creditor relationship between the patients and the hospitals. The Hospital Lien Statute is just one mechanism that hospitals may use to recover the debt owed for treatment—an amount that would be owed regardless of whether a lawsuit against a tortfeasor ensued. To expect a creditor to help pay attorney fees for a lawsuit when they are entitled to collect on the debt owed them—regardless of whether a suit is filed or the outcome—is unrealistic and illogical. Since the relationship between the hospital and the patient is one of creditor and debtor, the hospital is not responsible for recouping the costs of litigating a personal injury claim. The hospital is owed the full amount of its bill regardless of the outcome of the litigation.[18]

---

[18] Hospital lien statutes serve important public policy roles. Hospital lien laws can balance the competing interests of injured patients, hospitals, attorneys, and other parties who may have an interest in proceeds arising out of personal injury claims. First, by affording hospitals direct and prioritized interest in funds collected by personal injury patients, the statute encourages the treatment of accident victims who may have no other means to pay. Second, because the statute grants hospitals a secured interest in those funds, it reduces the amount of litigation that may otherwise have to occur to obtain collection of the healthcare debt. Third, because

**CONCLUSION**

¶25 The plain language of the Hospital Lien Statute creates a priority for the distribution of the proceeds in third-party liability cases. The hospitals' interpretation is the only plausible interpretation of the statute when read as a whole. Furthermore, even if the statute were ambiguous, we are not persuaded by the patients' proportional sharing arguments and reject them because we would have to incorporate substantive terms that are not present in the language of the statute. Also, we reject the patients' assertion that the common fund doctrine is a public policy consideration that justifies their rationalization for adopting proportional sharing. We affirm the district court in its grant of summary judgment to the hospitals.

---

legal services are often required to resolve personal injury claims and make the victim financially whole, prioritizing attorney fees incentivizes attorneys to provide legal services under a contingency fee agreement to clients that may otherwise not be able to retain attorneys. *See generally* Carol A. Crocca, Annotation, *Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery From Tortfeasor Causing Patient's Injuries,* 16 A.L.R. 5th 262 (1993).