*This opinion is subject to revision before final publication in the Pacific Reporter*

**2021 UT 5**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ALEXIE KAMOE,
*Appellant*,

*v.*

HONORABLE STEVAN RIDGE,
*Appellee*.

No. 20190111
Heard October 9, 2020
Filed January 28, 2021

On Direct Appeal

Fourth District, American Fork
The Honorable Robert C. Lunnen
No. 180100218

Attorneys:

Douglas J. Thompson, Provo, for appellant

Carl R. Hollan and David O. Leavitt, Provo, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1  The Utah County Attorney's office charged Alexie Kamoe in justice court with three separate criminal counts. Pursuant to a negotiated plea bargain, Kamoe pled guilty to a single count of Impaired Driving. Following sentencing, she appealed her conviction to district court but withdrew the appeal after that court denied her motion to suppress blood-test evidence. Back in justice court, Kamoe asked to have her original conviction, sentence, and commitment (collectively, the "Judgment") reinstated. The court

refused at the request of the prosecutor, who wanted her to face trial on the initial three counts. In response, Kamoe filed in the district court a petition for extraordinary relief in which she asked that court to reinstate the original Judgment. When that petition was denied, she appealed to this court.

¶2 The issue in this case is straightforward enough: Does an appeal from a negotiated plea in justice court under Utah Code section 78A-7-118(3) vacate that court's Judgment? As we explain below, it doesn't. Under the plain language of the statute, a Judgment resulting from a negotiated plea in justice court persists, although it may be stayed pending the defendant's appeal to district court.

¶3 Having determined that both the justice court and the district court misread subsection 118(3) and, therefore, erred in refusing to reinstate Kamoe's Judgment, we exercise our discretion under rule 65B(d)(2) of the Utah Rules of Civil Procedure and grant Kamoe the relief she seeks. Accordingly, we reverse the district court's denial of Kamoe's petition for extraordinary relief and remand to the justice court with instructions to restore the original Judgment.

## BACKGROUND

¶4 Utah County Sheriff's Department deputies found Kamoe driving on a closed road. They alleged that a search of her vehicle revealed marijuana and open containers of alcohol and that a subsequent blood test revealed the presence of THC, THC metabolite, and cocaine metabolite in her system.

¶5 The Utah County Attorney's office charged Kamoe in the Utah County Justice Court with three counts: (1) Driving with a Measurable Controlled Substance in the Body, (2) Possession or Use of Marijuana, and (3) Failure to Obey a Traffic Control Device. Kamoe made a motion to suppress the blood-test evidence, which the court denied. She then, with the aid of counsel, negotiated with the prosecutor a plea bargain that contemplated the dismissal of Counts 2 and 3 and the amendment of Count 1 to a single count of Impaired Driving, a charge that is available only as part of a negotiated plea. *See* UTAH CODE § 41-6a-502.5(1)(b). That same day, the justice court sentenced Kamoe to 180 days in jail but suspended the sentence and instead ordered that she spend two days in jail, pay a $1,420 fine, and complete an alcohol/substance-abuse evaluation and comply with any recommended treatment.

¶6 Kamoe appealed her conviction in the justice court to the district court. The justice court stayed her sentence pending the

disposition of her appeal pursuant to Utah Code section 78A-7-118(2).[1] In district court, Kamoe again moved to suppress the blood-test evidence, and the motion was again denied. She then filed a motion to withdraw her appeal and requested a remand to the justice court under rule 38(f)(6) of the Utah Rules of Criminal Procedure. The district court granted the motion.

¶7 Back in justice court, Kamoe requested that the stay on her negotiated sentence be lifted and the Judgment be reinstated. The prosecutor objected, claiming that, under Utah Code section 78A-7-118(3), her original Judgment was voided upon her appeal. And this time around, the prosecutor was unwilling to offer the same deal—Kamoe would either plead guilty to, or face trial on, the original three counts. The justice court agreed with the prosecutor's interpretation of subsection 118(3) and denied Kamoe's request for reinstatement.

¶8 Kamoe responded by filing in district court a petition for extraordinary relief under rule 65B(d)(2) of the Utah Rules of Civil Procedure, alleging that the justice court had "exceed[ed] its jurisdiction or abused its discretion" by misinterpreting subsection 118(3) and not allowing the Judgment to be reinstated. After briefing and oral argument, the district court denied Kamoe's petition. She then appealed the denial of the petition to the court of appeals, which certified the case to this court. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

**STANDARD OF REVIEW**

¶9 When considering the appeal of a petition for extraordinary relief, the reviewing court "may" grant relief "where an inferior court . . . has exceeded its jurisdiction or abused its discretion." UTAH R. CIV. P. 65B(d)(2)(A). Absent special circumstances not present here, "the abuse-of-discretion standard of review" will typically "include review to ensure that no mistakes of law affected a lower court's use of its discretion,"[2] and "the

---

[1] As we point out below, *infra* ¶¶ 28–32, it would be a legal impossibility for the justice court to have stayed the Judgment if it were void.

[2] "There may be situations in which a court has misinterpreted a statute defining the scope of its discretionary power but that misinterpretation does not result in a technical abuse of discretion." *State v. Barrett*, 2005 UT 88, ¶ 17 n.5, 127 P.3d 682. For example, a court may mistakenly believe through an erroneous interpretation

(continued . . .)

proper interpretation of a statute is a question of law." *State v. Barrett*, 2005 UT 88, ¶¶ 14, 17, 127 P.3d 682 (footnote omitted); *see also State v. Petersen*, 810 P.2d 421, 425 (Utah 1991) ("[T]rial courts do not have discretion to misapply the law."). Therefore, we review the justice court's interpretation of subsection 118(3) for correctness.

¶10 Still, a showing that an inferior court abused its discretion under rule 65B(d)(2) only gets a petitioner a foot in the door. As we have explained, a lower court's abuse of discretion establishes "adequate grounds for relief," but a reviewing court "may nevertheless withhold relief." *Barrett*, 2005 UT 88, ¶ 24. Following a showing of abuse of discretion, "[a] court faced with a petition for extraordinary relief will consider multiple factors when determining whether or not to grant the relief requested in the petition." *Id.* (listing, as examples, factors such as "the egregiousness of the alleged error, the significance of the legal issue presented by the petition, [and] the severity of the consequences occasioned by the alleged error"). In short, "[t]he question of whether to grant a petition for extraordinary relief lies within the sound discretion of this court." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 22, 299 P.3d 1058 (citing *Barrett*, 2005 UT 88, ¶ 24).

## ANALYSIS

¶11 This case concerns the effect of an appeal from a negotiated plea in justice court on the defendant's Judgment. Utah Code section 78A-7-118(3) provides:

> If an appeal under Subsection (1) is of a plea entered pursuant to negotiation with the prosecutor, and the defendant did not reserve the right to appeal as part of the plea negotiation, the negotiation is voided by the appeal.

And subsection (1) states in relevant part: "In a criminal case, a defendant is entitled to a trial de novo in the district court only if

---

of a statute that it can pursue one of two possible courses of action given the case at bar, when in fact it may only properly pursue one of those courses. *See id.* If the court nonetheless chooses the correct course of action, it has committed an error of law by misinterpreting the statute but has not yet exceeded its discretion under that statute. *See id.* "In such a situation, corrective appellate action may be warranted to enable the lower court to exercise its discretion with the proper legal boundaries in mind." *Id.*

the defendant files a notice of appeal within 28 days of: (a) sentencing . . . ." UTAH CODE § 78A-7-118(1). The State argues that the final clause of subsection 118(3) voids upon appeal not just the pre-plea agreement but also the conviction, sentence, and commitment, *i.e.*, the Judgment. Kamoe responds that the "negotiation" voided by appeal does not implicate everything attendant the Judgment; rather, the provision makes clear that, absent an agreement to the contrary, the prosecutor and defendant are not bound in district court by their plea negotiations in justice court or the outcome of those negotiations.

¶12 Thus, in Kamoe's view, when a defendant appeals a Judgment based upon a plea in justice court but "d[oes] not reserve the right to appeal as part of the plea negotiation," the Judgment remains in place unless it is supplanted by a new judgment in the district court. But there, neither the district court nor the prosecutor are bound by the same plea deal as offered below. The prosecutor has the right to take the plea deal off the table and try the defendant on all the original charges.

¶13 We agree. The plain language of subsection 118(3), read in light of the whole statute, demonstrates that "negotiation" means the pre-plea agreement between the prosecutor and defendant and does not include the Judgment. Further, the State's interpretation of subsection 118(3) cannot be read in harmony with the statute as a whole, as it would create a chasm in the statutory structure governing justice court jurisdiction.

¶14 Finding that the district court abused its discretion in misapplying subsection 118(3), we employ our ample discretion to grant Kamoe the relief she seeks under the standard of review articulated in *State v. Barrett*. 2005 UT 88, ¶ 24, 127 P.3d 682; *see supra* ¶ 10.

## I. UNDER THE PLAIN LANGUAGE OF SUBSECTION 118(3), AN APPEAL FROM A NEGOTIATED PLEA IN JUSTICE COURT PRESERVES THE ASSOCIATED JUDGMENT

¶15 Our object in interpreting a statute is to determine the intent of the legislature. *Castro v. Lemus*, 2019 UT 71, ¶ 17, 456 P.3d 750. To do so, we first look to "the plain language of the statute" and seek to interpret it "in harmony with other statutes in the same chapter and related chapters." *Id.* (citations omitted). "If, after conducting this plain language review we are left with competing reasonable interpretations, there is statutory ambiguity." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 10, 428 P.3d 1096 (citing *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (stating that statutory language is ambiguous if "its terms

remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis")). "However, 'a statute susceptible to competing interpretations may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible.'" *Bryner*, 2018 UT 52, ¶ 10 (quoting *Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 60, 131 P.3d 208 (Parrish, J., concurring)).

¶16    After applying these core interpretive norms, we see no ambiguity here. True, the parties offer differing possible interpretations of subsection 118(3). But "only one interpretation is *plausible* given the text of the act as a whole." *Bryner*, 2018 UT 52, ¶ 11. Only Kamoe's "interpretation makes sense on its face under the ordinary meaning of the words as used in the statute *and* harmonizes [all of] the language . . . of the statute." *Id.* "[F]inding no ambiguity, we determine the statute's meaning by its plain language." *Id.*

### A. Under the Plain Language of Subsection 118(3), "Negotiation" Means the Pre-Plea Agreement between the Prosecutor and Defendant

¶17 Our analysis begins with the disputed word: "negotiation." In ordinary usage, "negotiation" typically means a bargaining process of sorts.[3] And while that process may yield a binding agreement, it is a strain to say that a "negotiation" itself could be "voided." Therefore, "negotiation," as used here, must mean more than just the pre-plea discussions between the parties. So while the parties agree that "negotiation" includes more than just the underlying discussions, they disagree on how much more.

¶18    The State argues that "'negotiation' encompasses the plea, sentence, and judgment" because the statute would otherwise be meaningless. Kamoe responds, in essence, that "negotiation" encompasses the pre-plea agreement between the prosecutor and defendant, meaning on appeal for a trial de novo in district court, "the defendant would not be obliged to plea[d] guilty as she had previously negotiated to do, and the prosecutor would not be

---

[3] *See, e.g.*, *Negotiation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A consensual bargaining process in which the parties attempt to reach agreement on a disputed or potentially disputed matter."); *Negotiate*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/negotiate (last visited Jan. 20, 2021) ("to confer with another so as to arrive at the settlement of some matter").

obliged to dismiss or reduce charges or recommend a lenient sentence as he previously negotiated to do."

¶19 Because, taken in isolation, both interpretations strike us as reasonable, the term "negotiation" seems ambiguous. But when we read "negotiation" in harmony with the entire text of subsection 118(3) and the whole statute, only Kamoe's interpretation makes any sense. The text of subsection 118(3) speaks of "a plea entered pursuant to negotiation with the prosecutor." This language supports Kamoe's interpretation in two ways. First, the phrase "pursuant to" indicates that the "plea" follows, but does not include, the "negotiation." Second, the phrase "negotiation with the prosecutor" implies that "negotiation" is merely what occurs between the defendant and the prosecutor. And the prosecutor, of course, has no authority over the final Judgment, which is solely within the purview of the court.

¶20 This interpretation is consistent with practice. A criminal defendant and prosecutor often engage in pre-plea discussions. These discussions may yield an agreement whereby the prosecutor promises to dismiss or reduce certain charges or recommend a lighter sentence, and the defendant promises to plead guilty. The State conserves judicial resources, the defendant gets a reduced penalty, and both parties receive a predictable outcome. While this pre-plea agreement may not be memorialized in writing, it is still essentially a contract. The actual plea, made to the judge, is entered "pursuant to" this agreement. But the agreement only binds the prosecutor and defendant—the judge may reject the plea in whole or in part. *See* UTAH R. CRIM. P. 11(i)(1)–(3).

¶21 An examination of the whole statute solidifies this interpretation. The legislature clearly knew how to use the terms "plea," "judgment," and "sentence," and how to differentiate those things from a "negotiation." For example, a defendant may appeal within twenty-eight days of "sentencing," UTAH CODE § 78A-7-118(1)(a), or a "plea of guilty." *Id.* at 118(1)(b). Upon filing an appeal, "any term of a sentence" shall be stayed pending resolution in district court. *Id.* at 118(2). And a prosecutor is entitled to a hearing de novo in the district court if he files an appeal within twenty-eight days of a "final judgment of dismissal," *id.* at 118(5)(a), or "an order arresting judgment." *Id.* at 118(5)(b). In contrast, the word "negotiation" appears only in subsection 118(3), indicating the legislature intended it to have a specific meaning independent from a "plea," "judgment," or "sentence."

¶22 The State attempts to bolster its interpretation of subsection 118(3) by pointing to the middle clause of the statute.

That clause specifies the "negotiation is voided" only if "the defendant did not reserve the right to appeal as part of the plea negotiation." In the State's view, the default state under subsection 118(3) is that the Judgment is voided on appeal. The State argues the middle clause allows a defendant to "retain the benefits of the negotiated plea" by "specifically preserving those benefits as part of the negotiated plea." And, in the State's view, those "benefits" are the Judgment. By this logic, Kamoe's interpretation "seeks to render this code section meaningless by obviating the need to reserve [the Judgment] on appeal." In contrast, the default state under Kamoe's interpretation is that the Judgment is preserved on appeal. So, if we accept Kamoe's interpretation, we must also interpret the "right to appeal" referenced in the middle clause to mean something more than a right to preserve the Judgment. *See Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 ("Wherever possible, we give effect to every word of a statute, avoiding '[a]ny interpretation which renders parts or words in a statute inoperative or superfluous.'" (alteration in original) (citation omitted)).

¶23 Reading the middle clause of subsection 118(3) against the backdrop of relevant case law helps illuminate the legislature's intent. *See, e.g.*, *Olseth v. Larson,* 2007 UT 29, ¶ 39, 158 P.3d 532 ("We presume the Legislature is aware of our case law . . . ."). We view the clause "and the defendant did not reserve the right to appeal as part of the plea negotiation" as a statutory recognition of a *Sery* plea. A *Sery* plea is a conditional plea in which a defendant pleads guilty (or no contest) but reserves the right to appeal the trial court's denial of a motion to suppress certain evidence.[4] *See State v. Sery*, 758 P.2d 935, 937–39 (Utah Ct. App. 1988). If the appellate court reverses the denial of that motion, the defendant's plea is withdrawn. *Id.* In other words, a *Sery* plea is essentially an appeal of limited scope, rather than a trial de novo.

---

[4] Utah courts have always required under *Sery* that a defendant bears the burden of establishing on the record his conditional plea. *See State v. Bobo*, 803 P.2d 1268, 1271 (Utah Ct. App. 1990) ("A defendant seeking appellate review pursuant to a conditional plea bears the burden of demonstrating that the conditional nature of the plea is unambiguously established in the trial court record. Defendant must show that the prosecutor consented to the conditional plea and that the trial judge approved the plea." (citations omitted)). The plain language of subsection 118(3) suggests no different result.

¶24 With *Sery* in mind, the plain language and purpose of subsection 118(3) become even more clear. The statute essentially does two things. First, it makes statutory the concept of a *Sery* plea for justice courts. Second, it differentiates this type of conditional plea from a standard (non-*Sery*) plea and makes clear that an appeal from a standard plea is not limited to any particular issue that may have been the focus of pre-plea negotiations. The district court will start fresh with a trial de novo, and the prosecutor and defendant will not be bound by their previous agreement.

¶25 An example helps to illustrate subsection 118(3)'s function. Imagine a defendant is charged with multiple counts of possession of controlled substances but, pursuant to negotiation with the prosecutor, pleads guilty to a single count of possession. However, she expressly conditions her plea, with the consent of the prosecutor, on the result of a subsequent motion to suppress certain evidence on appeal in district court.[5] Her appeal of the single possession count proceeds "de novo" in district court, and she moves to suppress the evidence. If the district court grants the motion, it will almost certainly result in the case being dismissed. But if the district court denies the motion to suppress, the defendant can either again plead guilty to the single count (effectively preserving the negotiated plea made below) or proceed to trial on that single count.[6]

¶26 Now, imagine that same defendant does not make a conditional plea. She is sentenced and appeals under subsection 118(1)(a). The case proceeds "de novo" in district court on the original possession counts. Under subsection 118(3), the

---

[5] It is quite possible that the prosecutor may require the defendant to waive her right to a trial de novo pursuant to the conditional plea. Because this scenario is not properly before the court and is irrelevant to the outcome here, we do not opine on the procedural result if the district court were to grant the motion to suppress on conditional appeal under this scenario.

[6] Under these circumstances, the defendant's right to proceed to trial in the district court stems from the "de novo" nature of an appeal from justice court. Conversely, in the setting of a conditional appeal from a plea made in district court, if the appellate court denies the motion to suppress, "[t]he defendant stands guilty and the proceedings come to an end." *Sery*, 758 P.2d at 939 (quoting Comment, *Conditioned Guilty Pleas: Post–Guilty Plea Appeal of Nonjurisdictional Issues*, 26 UCLA L. REV. 360, 378 (1978)).

prosecutor in district court is not obligated to make the same (or any) offer as was made in justice court. Regardless of the district court's ruling on the motion to suppress, the defendant can either proceed toward an unknown outcome[7] or withdraw the appeal prior to entering a guilty plea or the commencement of a trial (and live with the justice court's final Judgment). UTAH R. CRIM. P. 38(f)(6). This latter option is exactly what Kamoe did here.[8]

¶27 Challenging the rule 65B motion in district court, the State asserted that the legislature could not possibly have intended to allow Kamoe to "have her cake by entering a plea and securing a

---

[7] If a defendant is tried and convicted in justice court and appeals to district court, the district court cannot impose a greater sentence than that of the justice court. *See* UTAH CODE § 76-3-405(1); *Wisden v. Dist. Ct. of Sevier Cnty.*, 694 P.2d 605, 606 (Utah 1984) (per curiam) (holding that Utah Code section 76-3-405(1) applies to appeals from justice court convictions). However, this limitation "does not apply when: . . . a defendant enters into a plea agreement with the prosecution and later successfully moves to invalidate his conviction." UTAH CODE § 76-3-405(2)(b). In *Vorher v. Henriod*, we held that this exception for guilty pleas applies to appeals from convictions based on guilty pleas in justice court, even though such appeals "do[] not involve setting aside justice court judgments on direct review." 2013 UT 10, ¶ 12, 297 P.3d 614 (citation omitted). This is all to say that a district court *can* impose on appeal a greater sentence than that imposed by the justice court if the latter was the result of a guilty plea.

[8] We mention here that the parties disagree over whether Kamoe waived her right to appeal as part of her plea bargain. Based on the record before us, all we can say for sure is that the plea negotiation was never memorialized and the Judgment of the justice court says nothing about Kamoe waiving her right to appeal. Without more, we cannot say that Kamoe knowingly and intentionally waived her constitutional right to appeal. *See, e.g.*, *United States v. Cherry*, 217 F.3d 811, 815 (10th Cir. 2000) ("There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." (quoting *Brookhart v. Janis*, 384 U.S. 1, 4 (1966)). To be clear, while the State bears the burden of showing that a criminal defendant waived her *general* right to appeal, the defendant bears the burden of establishing on the record a *conditional* appeal. *See supra* ¶ 23, n.4.

negotiated conviction, and eat it, too, by filing an appeal and attempting to secure her rights in another Court." Yet, again, "[t]he best evidence of the legislature's intent is the 'plain language of the statute itself.'" *State v. Ogden,* 2018 UT 8, ¶ 31, 416 P.3d 1132 (citation omitted). And here, the plain language of subsection 118(3) demonstrates that "negotiation" means only the pre-plea agreement between the prosecutor and defendant and does not include the associated Judgment.[9]

### B. The State's Position Creates a Significant Gap in the Statutory Structure Governing Jurisdiction of Justice Court Cases

¶28 Having ascertained the meaning of "negotiation" within subsection 118(3), we now explain how only Kamoe's interpretation of subsection 118(3) harmonizes the jurisdictional provisions of the whole statute. We begin by showing how the Utah Code carefully constructs a statutory framework governing the original jurisdiction of justice courts and appellate jurisdiction of district courts. We then explain how the State's position punches a major hole in this framework. Simply put: If Kamoe's "appeal" of her negotiated plea "voided" her Judgment under subsection 118(3), from what did she appeal? And when she withdrew her appeal, under what authority did the justice court reassume jurisdiction of a case for which it had already entered a final Judgment that was subsequently vacated? Under the State's reading, Kamoe could simply appeal her Judgment, withdraw that appeal, and walk away scot-free.[10]

¶29 The original jurisdiction of justice courts and appellate jurisdiction of district courts over cases originating in justice courts are dictated by statute. Subject to a few exceptions, "a justice court has original jurisdiction over class B and C misdemeanors, violation of ordinances, and infractions committed within the justice court's territorial jurisdiction." UTAH CODE § 78A-7-106(1). Meanwhile, "[t]he district court has *appellate jurisdiction* over *judgments and*

---

[9] "Courts are bound by the plain language of the statute." *Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2006 UT 45, ¶ 17, 143 P.3d 278. The legislature, of course, is not. If the legislature did not intend our interpretation of subsection 118(3), we invite it to amend the statutory language.

[10] From the "Old English *scotfreo*, [meaning] 'exempt from royal tax.'" *Scot-free,* Online Etymology Dictionary, etymonline.com (last visited Jan. 20, 2021).

*orders* of the justice court as outlined in Section 78A-7-118." *Id.* § 78A-5-102(6) (emphases added).

¶30    Utah Code section 78A-7-118, in turn, establishes the "trial de novo" system of appeals from justice court. "Because justice courts are courts not of record, the appeals process from a justice court decision is unique." *Bernat v. Allphin*, 2005 UT 1, ¶ 8, 106 P.3d 707. A criminal defendant who is convicted or pleads guilty in justice court is entitled to a "trial de novo" in district court if she files a "notice of appeal" within twenty-eight days of "sentencing" or "a plea of guilty or no contest in the justice court that is held in abeyance." UTAH CODE § 78A-7-118(1). "Upon filing a proper notice of appeal, any term of a sentence imposed by the justice court shall be stayed as provided for in Section 77-20-10 [of the Utah Code of Criminal Procedure] and the Rules of Criminal Procedure." *Id.* at 118(2). And on appeal, "[t]he district court shall retain jurisdiction over the case on trial de novo." *Id.* at 118(7). Once the district court enters a judgment, it replaces that of the justice court and becomes the final decision of the case. *See id.* at 118(8); UTAH R. CRIM. P. 38(f)(4). However, "[a] defendant, at a point prior to entering a plea admitting guilt or a no contest plea, or prior to commencement of trial, may choose to withdraw the appeal and have the case remanded to the justice court." UTAH R. CRIM. P. 38(f)(6). Thus, the statute, supplemented by the Utah Rules of Criminal Procedure, dictates how jurisdiction is passed both to the district court on appeal and back to the justice court on remand if the appeal is withdrawn.

¶31    The State's reading of subsection 118(3) is antithetical to this jurisdictional system. By its account, Kamoe's appeal of her negotiated plea vacated the Judgment of the justice court. But this cannot be. If the State were correct, there would be no "judgment" over which the district court could assume "appellate jurisdiction," and a court that "lacks appellate jurisdiction . . . 'retains only the authority to dismiss the action.'" *Hayes v. Intermountain GeoEnvironmental Servs. Inc.,* 2018 UT App 223, ¶ 5, 437 P.3d 650 (quoting *Ramsay v. Kane Cnty. Hum. Res. Special Serv. Dist.*, 2014 UT 5, ¶ 17, 322 P.3d 1163). Further, under the State's logic, when Kamoe appealed and the justice court stayed her sentence as required under subsection 118(2), it somehow stayed a sentence that no longer existed. These existential dilemmas demonstrate how an "appeal" for a trial de novo in district court depends on the continued existence of the justice court's final Judgment.

¶32    The State's position divests not only the district court of "appellate jurisdiction" to hear Kamoe's appeal, but also the justice

court of jurisdiction to hear her "remand" upon withdrawal of that appeal. By the State's logic, Kamoe's Judgment was voided when she filed her appeal. So, when she withdrew the appeal—as she had every right to do under rule 38(f)(6)—the justice court would have had no jurisdiction to assume a "remand" of a case for which it had already entered a Judgment that was subsequently vacated. As a result, Kamoe could simply walk away. If the State wishes to continue its case against Kamoe, by its rationale, it would presumably need to file a new information and start over,[11] assuming it could even do so without running afoul of constitutional protections against double jeopardy.[12]

¶33 In sum, the State's interpretation of subsection 118(3) cannot be read "in harmony with other statutes" controlling the jurisdiction of cases originating in justice court. The State's position would create not just a crack but a gaping hole in the jurisdictional structure of the justice court system through which entire cases could fall. Kamoe's interpretation, on the other hand, not only is consistent with the statutory framework, but also squares with how

---

[11] And this time, the prosecutor would need to ensure that he engaged in no "negotiation" with Kamoe which could potentially trigger subsection 118(3). Otherwise, she could simply plead guilty, appeal, and withdraw, perpetuating an absurd game of jurisdictional hide-and-seek.

[12] Under both article I, section 12 of the Utah Constitution and the Fifth Amendment to the United States Constitution, no person shall be "twice put in jeopardy" for the same offense. "The Utah Supreme Court has observed that it is well settled 'that jeopardy attaches when a court accepts a guilty plea.'" *State v. Horrocks*, 2001 UT App 4, ¶ 14, 17 P.3d 1145 (quoting *State v. Kay*, 717 P.2d 1294, 1302 (Utah 1986)); *see also Kay*, 717 P.2d at 1304 (applying the same analysis to both constitutional provisions), *overruled on other grounds by State v. Hoff*, 814 P.2d 1119, 1123 (Utah 1991). Nonetheless, *Kay* implied that jeopardy may not attach to a guilty plea when one party "unilaterally withdraw[s] from the agreement without a showing that facts analogous to those warranting a mistrial exist." *See Kay*, 717 P.2d at 1302–06 (analyzing certain exceptions to double jeopardy recognized in *United States v. Cruz*, 709 F.2d 111 (1st Cir. 1983)).

While the issue of double jeopardy was a focus of the district court's rule 65B hearing, it is not raised or significantly briefed on appeal. As such, we need not decide this issue today since the State's position fails on other grounds.

the system works in practice: A Judgment entered by a justice court persists on appeal until vacated or replaced by the district court.

¶34   We therefore find that only Kamoe's reading of subsection 118(3) "makes sense on its face under the ordinary meaning of the words as used in the statute *and* harmonizes [all of] the language . . . of the statute." As such, we hold that an appeal under subsection 118(3) does not void the Judgment of the justice court.

## II. RELIEF UNDER RULE 65B IS WARRANTED

¶35   So far, Kamoe has shown that the justice court committed a legal error when it misapplied subsection 118(3) and denied her motion to reinstate the original Judgment. As such, we find that the justice court abused its discretion. *See supra* ¶ 9; *State v. Petersen*, 810 P.2d 421, 425 (Utah 1991) ("[T]rial courts do not have discretion to misapply the law."). Therefore, Kamoe has established "adequate grounds for relief" pursuant to her rule 65B motion, but this court still has discretion to grant that relief or not. *State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682.

¶36   In *Barrett*, we listed some examples of factors to consider when deciding a rule 65B(d)(2) motion. *Id.* ¶ 24. While these factors may certainly aid the rule 65B calculus, we have previously warned against inflexible reliance on a non-exhaustive list of common-law factors designed to merely facilitate a court's analysis. *See, e.g.*, *State v. Ring*, 2018 UT 19, ¶ 23, 424 P.3d 845 (explaining that "[i]t is always error" for a court to "rely inflexibly upon each" factor outlined in *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997), when interpreting rule 403 of the Utah Rules of Evidence, rather than the language of the rule itself). Instead, the thrust of the *Barrett* analysis is that appellate courts have broad discretion to consider all circumstances related to the rule 65B(d)(2) motion.

¶37   Here, each party makes apocalyptic predictions regarding the other's interpretation of subsection 118(3) and the implications of granting or denying Kamoe's petition. The State argues that every criminal defendant would want to "test the waters" in district court after making a plea in justice court, which "would up-end the justice court system and overload the district courts." Kamoe argues the opposite—that the State's position will disincentivize justice court defendants from making pleas, instead encouraging them "to take every case to trial knowing it is their only way to appeal and knowing that no matter what happens at the trial, they will get a complete do-over." While this court cannot forecast the future, we can say that both positions are likely overstated, as evidenced by the fact that this issue has been raised so

14

infrequently.[13] Presumably, most criminal defendants desire either the finality of a guilty plea or the opportunity to defend their case in a court of record.

¶38 With little more than unsubstantiated predictions of catastrophe in both directions, we cannot abdicate our "responsibility to correctly interpret the law governing the issues before us." *In re E.H.*, 2006 UT 36, ¶ 18, 137 P.3d 809. Here, that means correcting the lower courts' erroneous interpretation of subsection 118(3) and granting Kamoe the relief she seeks.

## CONCLUSION

¶39 Under Utah Code section 78A-7-118(3), a criminal defendant's appeal of a guilty plea made in justice court does not void that court's conviction, sentence, and commitment. To hold otherwise would oppose the plain language of the statute and create a significant jurisdictional gap in the justice court system. Therefore, we reverse the district court's denial of Kamoe's petition for extraordinary relief and remand the case to justice court with instructions to reinstate her original Judgment.

---

[13] For example, Kamoe's counsel told the district court that he has "done hundreds of de novo appeals" and has "never seen it before."