**2022 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOHNATHAN BUCK and BROOKE BUCK,
*Petitioners*,

*v.*

UTAH STATE TAX COMMISSION,
*Respondent*.

No. 20200531
Filed February 24, 2022

On Petition for Review of Agency Decision

Attorneys:[1]

Samuel A. Lambert, Salt Lake City, for petitioners

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Deputy Solic. Gen.,
John McCarrey, Asst. Att'y Gen., Michelle Lombardi, Asst. Att'y
Gen., Salt Lake City, for respondent

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

¶1 We "should have a tax system that looks like someone
designed it on purpose."[2] Petitioners, John and Brooke Buck, offer

---

[1] Attorneys for amici curiae: Mark K. Buchi, Steven P. Young,
Nathan R. Runyan, Salt Lake City, for American College of Tax
Counsel; Paul W. Jones, Salt Lake City, for Utah Taxpayers
Association and Utah Association of Certified Public Accountants;
Gary R. Thorup, Salt Lake City, for Wayne L. Neiderhauser and M.
Keith Prescott.

[2] Attributed to William E. Simon, Former Secretary of the
Treasury. *See* N. Gregory Mankiw, *A Better Tax System (Assembly
Instructions Included)*, N.Y. TIMES (Jan. 21, 2012),

(continued . . .)

a plain-meaning interpretation of section 136—the Domicile Provision—of the Utah Individual Income Tax Act, UTAH CODE §§ 59-10-101 to 59-10-1405 (IITA),[3] that suits this obvious and sensible statement. Respondent, the Utah State Tax Commission, not so much.

¶2   Where an individual is domiciled can have huge income tax consequences. In this case, the Tax Commission determined the Bucks "were domiciled in Utah for the 2012 tax year" and, therefore, owed nearly $400,000 in back taxes and interest.

¶3   The Bucks dispute the Tax Commission's determination. They maintain they were domiciled not in Utah but Florida in 2012, and they argue the Commission's decision suffers from significant interpretive and constitutional defects. On the interpretive side, the Bucks contend that the Commission stumbled in construing IITA to mean that they had claimed a residential property exemption on their Utah residence, triggering the rebuttable presumption of domicile under section 59-10-136(2)(a). The Bucks further contend that the Commission compounded this error by reading section 136 as barring consideration of "virtually all" evidence relevant to the Bucks' ability to rebut the presumption. On the constitutional side, the Bucks take the position that section 136, "as interpreted and applied by the Commission," unconstitutionally deprived them of due process and other constitutional rights.

¶4   We agree with the Bucks on their second point: The Tax Commission erred as a matter of law in interpreting section 136 to effectively preclude them from being able to overcome the rebuttable presumption of domicile. In addition, the stipulated facts, which the Commission basically adopted, decisively demonstrate that the Bucks were not domiciled in Utah in 2012 for income tax purposes. Accordingly, we reverse the Commission's decision on this basis alone. And because we need not, we do not reach either the question of whether the Bucks had claimed the residential property exemption or the question of whether the

---

https://www.nytimes.com/2012/01/22/business/four-keys-to-a-better-tax-system-economic-view.html.

[3] All references to IITA are to the provisions in effect in 2012, the tax year in question.

Commission's interpretation of the Domicile Provision would render it unconstitutional.[4]

## BACKGROUND

¶5   John Buck is one of the blessed few talented enough to make a living playing baseball, America's pastime. He started his career in 1998. He and Brooke married the following year.[5]

¶6   In 2004, John was traded to the Kansas City Royals. That same year, the Bucks purchased a house in Arizona, where the Royals hold spring training.

¶7   In 2007, the Bucks purchased a house in Bluffdale, Utah, to have a place close to Brooke's mother—Brooke was pregnant with twins at the time. The house received a primary residential property tax exemption from 2008 through 2013. The Bucks, however, took no action to request this exemption.

¶8   Testifying before the Tax Commission, Brooke spoke to the nature and quality of the Bucks' living accommodations in Utah. According to Brooke, the Bluffdale house "was among the first in a new development and was surrounded by" many bank-owned

---

[4] Still, we note the Attorney General did not defend the Tax Commission's interpretation against the Bucks' charge that it renders the Domicile Provision unconstitutional. *Infra* ¶ 48. Accordingly, and as we explain below, even if we were to credit the view that the Commission's interpretation is reasonable and thus creates an ambiguity in interpreting the statute, the uncontested constitutional problems would cut against adopting the Commission's view. *Infra* ¶ 48; *see, e.g.*, ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 247 (2012) ("'Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" (brackets omitted) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909))).

[5] Again, this case comes to us from the Tax Commission on a set of findings of fact almost entirely grounded on the parties' written stipulation. We lay out those facts in some detail as we have elected to fully resolve this matter instead of returning it to the Commission for further proceedings. *Infra* ¶¶ 49-51.

lots following the Great Recession.[6] Also according to Brooke, the resultant lack of neighbors led to a sense of isolation and a lack of community. She further testified that these "feelings of isolation" were "deepened" by "one of the major streets that would link" the house "to neighboring areas" being gated. Similarly, she testified that "yet another impediment to a sense of community" was the "sporadic" or "lack of" snow removal near the house.

¶9 In November 2010, John signed a three-year contract with the Florida Marlins. A few months later, the Bucks moved to Florida.

¶10 The Bucks first attempted to buy a place in Pembroke Pines, Florida. When the deal fell through, they rented a house in Davie, Florida. The term of the lease was April 2011 through March 2012.

¶11 In December 2011, the Bucks entered into an agreement to lease a home in Plantation, Florida, from February 2012 through January 2013. The agreement provided for an additional writing that would allow the Bucks to buy the home during the lease term for $1,550,000. The record suggests that the Bucks took possession in April 2012.

¶12 From 2008, shortly after the Bucks purchased the Bluffdale house, to 2012, the relevant tax year, the assessed value of the house, per Salt Lake County, had fallen from $712,290 to $548,090. Given the precipitous drop in value, the Bucks, quite understandably, did not think the Utah real estate market favorable in 2011 or 2012 and elected not to try to sell the house at that time. They also thought it convenient to have a place to stay when they were visiting Utah. In keeping with this thinking, in 2012, John spent eleven or so full or partial days, and Brooke spent twenty-two full or partial days, in Utah visiting relatives.

¶13 John's baseball career was not the only reason the Bucks moved to Florida. They also moved to give one of their sons, who, at the time, was suffering from a severe developmental delay and little language ability, access to superior doctors and educational programs. To this end, the Bucks enrolled their son in the Broward Early Steps program at the Children's Treatment & Diagnostic

---

[6] The facts reflect that an article in the May 24, 2010 edition of *The Salt Lake Tribune* noted the home foreclosure rate in Utah was the fifth highest in the United States.

Center in Fort Lauderdale, Florida, in early 2011, the Indian Trace Elementary special needs and early intervention preschool program in Weston, Florida, from August 2011 through June 2012, and the preschool at Temple Beth Emet in Plantation, Florida, from June 2012 through June 2013.

¶14 The Bucks enrolled their other son in Cambridge School in Weston, Florida, from August 2011 to June 2012, and then summer school and preschool at Temple Beth Emet in Plantation, Florida, from June 2012 through June 2013.

¶15 Both Buck children participated in karate and soccer during the 2012 school year. And a Florida pediatric group provided the children with all of their routine medical care.

¶16 In the 2011 to 2013 time period, the Bucks arranged their lives around their Florida residence. They belonged to a Florida church congregation, where Brooke volunteered to teach children's classes; they joined the Weston YMCA (in 2011); they held a gym membership in Weston (in 2011 and 2012); and they took part in the 2012 Dan Marino Walkabout Autism event in Florida. In addition, John volunteered with Camp Shriver in Miami, which is associated with Special Olympics Miami Dade County, and Brooke served as a room mother at Indian Trace Elementary and Temple Beth Emet.

¶17 The Bucks' pets were also part of the move to Florida, receiving their care from a Florida veterinarian throughout 2011, 2012, and into 2013. In actual fact, the Bucks became the poster family in Florida for public service messages urging pet adoption. And Brooke served as a campaign leader to reduce animal killings in Miami-Dade County.

¶18 John and Brooke obtained Florida driver licenses in September 2011. They also registered to vote in Florida in September 2011 and remained registered to vote there in 2012. John acquired a nonresident Utah hunting license in 2012 (mailed to him in Florida).

¶19 The Bucks registered two vehicles in Utah in the 2011 to 2013 timeframe: a 2010 Ford F250 truck, which they gave to Brooke's father to use, and a 2007 Acura MDX, which they gave to her mother. A commercial trailer was also registered in the Bucks' name in Utah, beginning May 2012. The trailer was purchased by Brooke's father to be used in a business the Bucks partly owned but that was operated by the father. They registered the rest of their vehicles during the relevant timeframe in Florida. These

vehicles include a Jeep Wrangler, Toyota Sequoia, BMW, and Ford Expedition.[7]

¶20 Brooke testified that in 2012 she and John received the bulk of their mail at their Florida address. The Bucks continued to get a lesser amount of their mail at the Bluffdale address, and that mail largely related to the Bluffdale property itself. Furthermore, for that mail, the Bucks arranged to have Brooke's mother send it to them in Florida.

¶21 In terms of taxes and tax filings, the Bucks filed a Utah form TC-40B averring they were only part-time Utah residents in 2011. The Bucks had no income from a Utah source in 2012 and filed no Utah tax return for that year; they instead filed state tax returns in California, Missouri, Ohio, and Wisconsin in 2011 and 2012, indicating on all of those returns that they were residents of Florida. The tax returns were all filed using an address in New Jersey, the location of their accountant.

¶22 The record suggests the Bucks returned to Utah sometime in 2013. At that time, they moved into their Bluffdale house, which required significant renovations to bring it up to the standards the Bucks enjoyed in Florida.

¶23 In 2018, the Tax Commission's Auditing Division concluded that the Bucks were domiciled in Utah in 2012. The Bucks filed a petition for redetermination to the Commission. The Commission held a formal hearing in 2019, and issued its findings of fact, conclusions of law, and final decision in 2020, finding the Bucks to have been domiciled in Utah in 2012 and putting them on the hook for almost $400,000 in taxes and interest. The Bucks filed a petition for review.

## JURISDICTION AND STANDARD OF REVIEW

¶24 This matter comes before us on appeal from a final decision of the Tax Commission following a formal hearing. As such, we exercise jurisdiction under Utah Code section 78A-3-102(3)(e)(ii). And we review the Commission's decision, which was predicated on the Commission's interpretation of IITA (a pure question of law), for correctness. *See Ellis-Hall Consultants*

---

[7] The Jeep Wrangler was registered in Utah in January 2011, and then in Florida from January 2012 through July 2013.

*v. Pub. Serv. Comm'n*, 2016 UT 34, ¶ 27, 379 P.3d 1270; UTAH CODE § 59-1-610(1)(b).

## ANALYSIS

¶25 In the proceedings below, the Tax Commission narrowly construed Utah Code section 59-10-136, the Domicile Provision. In the Commission's view, it could (and should) consider virtually no evidence relevant to the presumption of domicile accompanying IITA's primary residential property tax exemption. The Bucks countered that the Commission's narrow take makes a rebuttable presumption irrebuttable, a nonsensical outcome. As the Bucks rather expressively put it in their principal brief to us: "[A]s interpreted by the Commission, the Domicile Presumption is invoked by the thinnest of conditions and cannot be rebutted by the thickest sheaf of evidence."

¶26 The Bucks are right.

## I. THE PLAIN MEANING OF THE DOMICILE PROVISION BACKS THE BUCKS

¶27 When we interpret a statute, we start with the plain language of the provision, reading "it in harmony with other statutes in the same chapter and related chapters." *Kamoe v. Ridge*, 2021 UT 5, ¶ 15, 483 P.3d 720 (citation omitted) (internal quotation marks omitted). "If, after conducting this plain language review we are left with competing reasonable interpretations, there is statutory ambiguity." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 10, 428 P.3d 1096. "However, 'a statute susceptible to competing interpretations may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible.'" *Id.* (quoting *Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 60, 131 P.3d 208 (Parrish, J., concurring)).

¶28 Bearing these interpretive tenets in mind, we construe the Domicile Provision to make two points clear, leaving no room for ambiguity. First, the presumption of domicile that results from claiming a primary residential property tax exemption is rebuttable. And second, contrary to the Tax Commission's overly narrow interpretation, taxpayers are not statutorily barred from having a meaningful opportunity to rebut the presumption.

¶29 On the first point, we assume without deciding that the Bucks claimed a residential property exemption on their Utah residence.[8] Under the Domicile Provision, such a claim unmistakably creates "a rebuttable presumption" the Bucks "have domicile in this state." UTAH CODE § 59-10-136(2)(a).[9] This much is uncontested.

¶30 What is contested, however, is the second point: whether the Domicile Provision affords the Bucks a meaningful shot at rebutting the presumption. And to get at the answer to this question, we need to properly understand the workings of IITA in general and subsections (1), (2), and (3) of the Domicile Provision in particular.

¶31 As we noted at the outset of this opinion, where an individual is domiciled can have substantial tax consequences. For example, it is "a well-established principle of interstate . . . taxation . . . that a jurisdiction . . . may tax *all* the income of its residents, even income earned outside the taxing jurisdiction." *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 462–63 (1995) (footnote omitted).

¶32 In line with this "well-established principle," *id.*, Utah levies a yearly tax on "the state taxable income" of its "resident individual[s]." UTAH CODE § 59-10-104(1). A "resident individual," in turn, is defined to include one who is "domiciled in this state." *Id.* § 59-10-103(1)(q)(i).

¶33 As such, the $400,000 question in this case is whether the Bucks were domiciled in Utah in 2012. Subsections (1), (2), and (3) of the Domicile Provision, taken together, provide the answer.

¶34 When courts refer to domicile, they are referring generally to "'[t]he place at which a person has been physically present and that the person regards as home' or 'a person's true, fixed, principal, and permanent home, to which that person intends to

---

[8] In addition to asserting the Tax Commission erred in limiting the evidence of domicile it could consider, the Bucks also argue the Commission wrongly concluded they had claimed a residential property exemption on their Utah residence.

[9] It is worth noting that "[i]f an individual is considered to have domicile in this state," then "the individual's spouse" is also "considered to have domicile" here. UTAH CODE § 59-10-136(5)(a).

return and remain even though currently residing elsewhere.'" *Lilly v. Lilly*, 2011 UT App 53, ¶ 13, 250 P.3d 994 (alteration in original) (quoting BLACK'S LAW DICTIONARY 558 (9th ed. 2009)). And in applying these rather orthodox principles of domicile, courts look to a multiplicity of factors including, but most certainly not limited to, "the places where the [individual] exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his [or her] family." *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996). "No single factor is determinative." *Id.*

¶35 Subsection (3) of the Domicile Provision largely reflects these principles and factors. With regard to the principles, we are told in (3)(a) that an "individual is considered to have domicile in" Utah if:

> (i) the individual or the individual's spouse has a permanent home in this state to which the individual or the individual's spouse intends to return after being absent; and (ii) the individual or the individual's spouse has voluntarily fixed the individual's or the individual's spouse's habitation in this state, not for a special or temporary purpose, but with the intent of making a permanent home.

UTAH CODE § 59-10-136(3)(a).

¶36 With regard to the factors, we are instructed in (3)(b) that the (3)(a) determination of domicile

> shall be based on the preponderance of the evidence, taking into consideration the totality of the following facts and circumstances: (i) whether the individual or the individual's spouse has a driver license in this state; (ii) whether a dependent with respect to whom the individual or the individual's spouse claims a personal exemption on the individual's or individual's spouse's federal individual income tax return is a resident student in accordance with [s]ection 53B-8-102 who is enrolled in an institution of higher education described in [s]ection 53B-2-101 in this state; (iii) the nature and quality of the living accommodations that the individual or the individual's spouse has in this state as compared to another state; (iv) the presence in this state of a spouse or dependent with respect to whom the

individual or the individual's spouse claims a personal exemption on the individual's or individual's spouse's federal individual income tax return; (v) the physical location in which earned income as defined in [s]ection 32(c)(2), Internal Revenue Code, is earned by the individual or the individual's spouse; (vi) the state of registration of a vehicle as defined in [s]ection 59-12-102 owned or leased by the individual or the individual's spouse; (vii) whether the individual or the individual's spouse is a member of a church, a club, or another similar organization in this state; (viii) whether the individual or the individual's spouse lists an address in this state on mail, a telephone listing, a listing in an official government publication, other correspondence, or another similar item; (ix) whether the individual or the individual's spouse lists an address in this state on a state or federal tax return; (x) whether the individual or the individual's spouse asserts residency in this state on a document, other than an individual income tax return filed under this chapter, filed with or provided to a court or other governmental entity; (xi) the failure of an individual or the individual's spouse to obtain a permit or license normally required of a resident of the state for which the individual or the individual's spouse asserts to have domicile; or (xii) whether the individual is an individual described in [s]ubsection (1)(b).

*Id.* § 59-10-136(3)(b).

¶37 In addition to, in effect, codifying the conventional approach to domicile, the Domicile Provision lays out situation-specific rules in subsections (1) and (2). Under subsection (1), an individual is "considered to have domicile" in Utah if "a dependent with respect to whom the individual . . . claims a personal exemption on the individual's" federal return is enrolled in a public kindergarten, elementary, or secondary "school in this state" or if "the individual or the individual's spouse is a resident student" enrolled in certain in-state institutions of higher education. *Id.* § 59-10-136(1)(a). This is an unbending presumption, meaning, if established, it cannot be rebutted.

¶38 Subsection (2) of the provision expands the list of individuals presumed domiciled here. Under (2)(a), this group

includes those individuals, like the Bucks, who claim "a residential exemption" for their "primary residence."[10] *Id.* § 59-10-136(2)(a). But unlike subsection (1), this presumption is unquestionably "rebuttable." *Id.* § 59-10-136(2).

¶39 The Tax Commission would have us cobble these three subsections together to allow them to "consider only" a taxpayer's "actions or inactions related to the residential property tax exemption" when applying the presumption under (2)(a). Thus, the Commission's position seems to be that the only evidence relevant to rebutting the subsection (2)(a) presumption is evidence that goes to the application of the residential property tax exemption itself.

¶40 For textual support, the Tax Commission relies on the following clause from subsection (3)(a): "Subject to [s]ubsection (3)(b), if the requirements of [s]ubsection (1) or (2) are not met for an individual to be considered to have domicile in this state, the individual is considered to have domicile in this state if" subsections (3)(a)(i) and (3)(a)(ii) are satisfied. *Id.* § 59-10-136(3)(a). In the Commission's eyes, the first *if* clause requires that it "first determine whether [t]axpayers are domiciled in Utah under sections 136(1) or (2) before considering any domicile factors listed in section 136(3)." Furthermore, according to the Commission, allowing taxpayers to use evidence beyond that tied to "their actions or inactions regarding their residential exemption" to rebut "the presumption of domicile under section 136(2)(a)" would eviscerate the first *if* clause.

¶41 We struggle to see the Commission's point. When it comes to rebutting the subsection (2)(a) presumption of domicile, the Tax Commission's interpretation confines taxpayers to evidence of their actions or inactions regarding the residential exemption itself. This is not rebuttal evidence; rather, this is evidence of whether the presumption even applies. Consider a hypothetical rule that says, "there is a rebuttable presumption that an individual who holds title to a vehicle was driving it at the time of any accident

---

[10] Although not relevant to this case, this group also includes those who are registered to vote in Utah (subsection (2)(b)) and those who "assert[] residency in this state for purposes of filing an individual income tax return" (subsection (2)(c)). UTAH CODE § 59-10-136(2)(b)–(c).

involving the vehicle." Under the Commission's approach, the only evidence a vehicle owner could put on to establish they were not behind the wheel at the time of an accident is evidence of their actions or inactions regarding title to the vehicle. This view is fundamentally and fatally flawed because it confuses evidence *establishing* a presumption with evidence relevant to *overcoming*, i.e., *rebutting*, the presumption.

¶42 One of our well-established contextual canons of statutory construction—the surplusage canon—helps illuminate the problem with the Tax Commission's view. Under the Commission's approach, the "rebuttable presumption" provision in subsection (2) carries no water. Scrap it altogether, and taxpayers could still put on evidence of their action or inaction regarding the residential exemption. In other words, taxpayers could still put on evidence indicating they did not "claim[] a residential exemption." UTAH CODE § 59-10-136(2)(a). This outcome puts subsection (2) on the same footing with subsection (1), which creates a "categorical" or non-rebuttable presumption, as the Tax Commission concedes.[11] Such an interpretation violates the surplusage canon and, under our jurisprudence, is anathema. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should needlessly be given an interpretation that causes it . . . to have no consequence").

¶43 We think it inconceivable that the Utah Legislature labored to create a rebuttable presumption that, in effect, is irrebuttable. Hence, we conclude that Tax Commission's interpretation is not reasonable, and we reject it.

¶44 The Bucks, on the other hand, read subsections (1), (2), and (3) together in a common-sense way that gives meaning to each section of the Domicile Provision. In the Bucks' view, the Tax Commission would first determine if an individual or the individual's spouse or dependent is enrolled in an educational

---

[11] Even though the subsection (1) presumption is categorical, there is no doubt that taxpayers could put on evidence they are not subject to it. For example, taxpayers could introduce facts showing their dependents were not "enrolled in a public kindergarten . . . in this state" during the tax year in question. UTAH CODE § 59-10-136(1)(a)(i).

institution in this state in a way that triggers subsection (1). *See supra* ¶ 37. If so, and absent application of subsection (4), which has no perch in this case, the individual is domiciled in Utah for purposes of IITA. Full stop.

¶45 If subsection (1) does not apply, the Tax Commission would turn to subsection (2) and determine if the individual claimed the residential exemption or otherwise triggered the application of this subsection. *See supra* ¶ 38. Unlike under subsection (1), however, the individual may rebut this presumption.

¶46 Subsection (3), in the Bucks' view, serves as IITA's catch-all domicile provision. Pursuant to this subsection, individuals not subject to the situation-specific rules of subsections (1) and (2) may still be considered domiciled in Utah if, after "taking into consideration the totality of the . . . facts and circumstances" set forth in subsection (3)(b), the "preponderance of the evidence" weighs in favor of domicile. *See supra* ¶¶ 35–36. And these so happen to be many of the same facts and circumstances the Bucks presented evidence on before the Tax Commission in their bid to overcome the subsection (2) presumption.

¶47 With the benefit of hindsight and focused briefing, it is often the case that we perceive ways in which statutory language could be improved. Section 136 is no exception: The legislature could have explicitly said taxpayers are not barred from relying on some or all of the subsection (3) factors in overcoming the subsection (2) presumption. But clairvoyance and perfection have never been the benchmarks by which we measure ambiguity. No, we focus on if, in reading the relevant provisions together, there are competing reasonable interpretations. Here, there are not. For the reasons we have expressed, only the Bucks' take survives our reasonableness inquiry.

¶48 What is more, even if we were to stretch and credit the Commission's interpretation as a reasonable one, resulting in an ambiguity, the Commission would still lose. As the Bucks and amicus curiae the American College of Tax Counsel ably point out, the Commission's interpretation raises several constitutional issues.[12] And the Attorney General's decision not to offer a defense

---

[12] The Bucks contend the Tax Commission's application of the Domicile Provision (1) denies them due process because "it doesn't

(continued . . .)

of the statute in light of this briefing provides us with a sufficient basis to conclude that there are serious problems attendant to the Commission's view. Accordingly, one of our prime expected-meaning canons—the constitutional-doubt canon—would heavily favor the Bucks' read of the Domicile Provision and cause us to reject the Commission's position.

## II. FOR PURPOSES OF IITA, THE BUCKS WERE NOT DOMICILED IN UTAH IN 2012

¶49 Having rejected the Tax Commission's flawed, overly narrow construction of the Domicile Provision, we apply the uncontested facts to the statute to determine whether the Bucks were domiciled in Utah during the 2012 tax year. They were not.

¶50 The uncontested facts overwhelmingly support the Bucks' contention that they were domiciled in Florida in 2012. We list these facts at length in paragraphs five through twenty-two above but recount just a few here as a refresher: John's work was based out of Florida, *see* UTAH CODE § 59-10-136(3)(b)(v); the children were enrolled in school in Florida; the Bucks held Florida driver licenses, *see id.* § 50-10-136(3)(b)(i); the nature and quality of the Bucks' living arrangements favored Florida, *see id.* § 59-10-136(3)(b)(iii); and the Bucks lives revolved around Florida, *see id.* § 59-10-136(3)(b)(vii). Indeed, the Tax Commission offered no response to the Bucks' observation to us that the Commission's Auditing Division "made no serious attempt to contest that the facts demonstrate the Bucks were actually domiciled in Florida" in 2012.

¶51 In short, the Tax Commission put all of its eggs in its interpretative basket, effectively conceding that if its assessment of the law failed to carry the day, the facts would compel us to rule for the Bucks. We agree.

---

permit a fair opportunity to rebut a presumption of Utah domicile even when that presumption is factually incorrect;" (2) "as applied[,] discriminates against persons who reside and/or are domiciled outside of Utah" in violation of the Privileges and Immunities Clause; and (3) unreasonably burdens interstate commerce. The brief of amicus curiae the American College of Tax Counsel expands on these and other constitutional issues.

**CONCLUSION**

¶52 We are not unsympathetic to the Tax Commission's preference for bright-line rules when it comes to determining domicile. Such rules promote uniformity and predictability and can often reduce transaction costs associated with fuzzy standards. But they can also lead to arbitrary and nonsensical outcomes, i.e., the case here.

¶53 Still, absent applying the absurdity doctrine or striking down the Domicile Provision as unconstitutional, we would be duty-bound to uphold the Tax Commission's view if the plain language supported it. But for the reasons we have identified, it does not. Consequently, we reverse the Commission's determination.

_____