*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the matter of the adoption of M.A.

MARIANNE TYSON,
*Appellant.*

No. 20221097
Heard November 8, 2023
Filed February 22, 2024

On Certification from the Court of Appeals

Third District, Salt Lake County
The Honorable Laura S. Scott
No. 223902369

Attorney:

David Pedrazas, Millcreek, for appellant

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Marianne Tyson wants to see the court records that memorialized her 1978 adoption.[1] Tyson does not know who her

---

[1] In juvenile matters, we typically refer to the subject of the case by their initials. Tyson used her name in the district court briefing and in the briefing before this court. We acknowledge the importance of maintaining confidentiality in juvenile cases, but because Tyson is an adult who uses her full name in court documents, we do so as well.

birth parents are but hopes to learn "health, genetic, or social information" about them to inform her doctors about any medical predispositions she may have.

¶2   The Utah Legislature has made a number of policy choices concerning adoption records. "An adoption document and any other documents filed in connection with a petition for adoption are sealed" and closed from public view for a century following the adoption. UTAH CODE § 78B-6-141(2), (3)(e). The Legislature has also decided that those sealed adoption records can be inspected or copied when a petitioner has shown "good cause." *See id.* § 78B-6-141(3)(c). The Legislature has not, however, defined good cause. This court has implemented the Legislature's "good cause" directive through Utah Rule of Civil Procedure 107(d). That rule instructs a court to determine "whether the petitioner has shown good cause and whether the reasons for disclosure outweigh the reasons for non-disclosure." UTAH R. CIV. P. 107(d).

¶3   The district court denied Tyson's petition to examine her adoption records. The court reasoned that good cause "require[d] something more than a desire to obtain health or genetic or social information unrelated to a specific medical condition of [Tyson]" and that to require less would "severely undermine[]" the "Legislature's policy determination that adoption records should be sealed for 100 years."

¶4   Tyson appeals, arguing in part that the district court misinterpreted the statute. We agree and remand to permit the district court to reassess Tyson's petition under the correct standard.

## BACKGROUND

¶5   Tyson was less than a year old when she was adopted in 1978. Some four decades later, she petitioned the district court to unseal her adoption file to discover "health, genetic, or social information" about her birth parents. Before her petition, Tyson had requested records from Utah's voluntary adoption registry, which could not find a parental match.[2] In her petition, Tyson claimed that her doctors had requested family medical history regarding "menopause, high blood pressure and/or stroke" and

---

[2] The Utah Adoption Registry is a voluntary, mutual-consent registry that helps adult adoptees born in Utah and their birth parents and blood-related siblings reunite with one another. *See* UTAH CODE § 78B-6-144.

that she could not provide the history because of her lack of access to her birth parents' records. Tyson argued that her lack of family medical history was sufficient good cause to unseal her record under section 78B-6-141(3)(c). With respect to rule 107's balancing requirement, she contended that her desire to understand her family medical history forty-four years after her adoption outweighed any interest in keeping the record sealed from her view.

¶6    Before the district court, Tyson admitted she was not aware that she suffered from any genetic condition for which it would be beneficial to have a better understanding of her family's medical history. The court asked for additional briefing on the question of how it should interpret good cause. The court noted that "as I interpret the statute correctly or incorrectly, good cause is something more than simply the adult adoptee's desire to have a general understanding of health or background or ethnicity or who the parents are."

¶7    At the next hearing, Tyson continued to argue that her right to know her birth parents and their respective medical histories outweighed the birth parents' privacy interests. The district court denied Tyson's petition. It recognized that "good cause" is not defined in the statute nor in rule 107. The court also noted that there was no controlling precedent to provide a definition. The court nonetheless concluded that good cause "require[d] something more than a desire to obtain health or genetic or social information unrelated to a specific medical condition of [a] [p]etitioner." The court reasoned that to require less would "severely undermine[]" the "Legislature's policy determination that adoption records should be sealed for 100 years."

¶8    The district court acknowledged that Tyson correctly asserted that "[i]t is the intent and desire of the Legislature that in every adoption the best [interest] of the child should govern and be of foremost concern in the court's determination." (First referencing UTAH CODE § 78B-6-102; and then citing *In re Adoption of B.B.*, 2017 UT 59, ¶ 35, 417 P.3d 1.) But the court also noted that the Legislature has decided that an unmarried mother is entitled to privacy regarding her pregnancy and adoption plan and that it protected this right through the one-hundred-year seal and the good cause requirement for unsealing. (Citing UTAH CODE § 78B-6-102(5)(b), (7).) The court refused to use the best interest of the child

standard for its inquiry, instead adhering to the good cause standard it had outlined.

¶9    The district court next conducted the balancing that rule 107 contemplates and determined that Tyson's proffered reasons for unsealing her adoption records did not outweigh her birth mother's privacy interests. The court found this was especially true "given the confidentiality that the statute afforded [the birth mother] when she made the decision to place [Tyson] for adoption over 40 years ago." The court also noted that "in the absence of good cause, the court is required to guard the confidentiality of adoption records consistent with the Utah Legislature's policy that such records be sealed." In accordance with this analysis, the court determined that Tyson was not entitled to obtain the requested records and denied her petition.

## STANDARD OF REVIEW

¶10 The Legislature has given district courts discretion to decide if good cause exists to unseal adoption records. We review that decision for an abuse of that discretion. But "[w]hen district courts have discretion to weigh factors[] [or] balance competing interests, . . . those discretionary determinations must rest upon sound legal principles." *State v. Boyden*, 2019 UT 11, ¶ 21, 441 P.3d 737. A "[m]isapplication of the law constitutes an abuse of discretion." *Id.* ¶ 19. Thus, "when a legal conclusion is embedded in a district court's discretionary determination, we peel back the abuse of discretion standard and look to make sure that the court applied the correct law." *Id.* ¶ 21. We review a lower court's statutory interpretation for correctness. *Scott v. Benson*, 2023 UT 4, ¶ 25, 529 P.3d 319.

## ANALYSIS

¶11 Tyson raises three arguments on appeal. She first claims that the best interest of the child is the overriding consideration in all adoption cases. And therefore, Tyson contends, the district court abused its discretion when it failed to consider whether the unsealing of her adoption records was in her best interest. Tyson next argues that the district court abused its discretion when it concluded that she was not entitled to obtain the records under Utah Code section 78B-6-141(3)(c). Finally, she contends that the district court abused its discretion when it held that the interest in

non-disclosure outweighed Tyson's justifications to unseal the records under Utah Rule of Civil Procedure 107.[3]

## I. THE GOOD CAUSE STANDARD, NOT THE BEST INTEREST OF THE CHILD STANDARD, APPLIES TO PETITIONS TO UNSEAL ADOPTION RECORDS

¶12  Tyson first asserts that the district court erred because it failed to afford primacy to the "child's best interest" in its analysis. Before the district court, Tyson argued that the Legislature has recognized that "in every adoption the best interest of the child should govern" and that standard should apply to her petition. (Quoting UTAH CODE § 78B-6-102(1).) The court refused to apply that standard and instead analyzed Tyson's petition using what it understood to be the good cause standard found in Utah Code section 78B-6-141(3)(c).

¶13  Tyson argues that as an adult who was adopted as a minor, she maintains the protections that the law affords to adopted children.[4] Tyson advocates that the Legislature's mandate—that "in every adoption the best interest of the child should govern"— applies to all proceedings related to a child's adoption, regardless

---

[3] On appeal, Tyson asserts that "[e]very person has the constitutional and natural right to know their health, genetic or social information" and that by denying her that right and refusing to unseal her adoption records, we are denying her equal protection under the law as guaranteed by the Fourteenth Amendment. But Tyson has failed to offer any authority or legal basis to support that argument. Advancing a successful argument requires more than dangling an interesting soundbite. "A party may not simply point toward a pile of sand and expect the court to build a castle." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248. Tyson has inadequately briefed her constitutional argument, and we will leave the question for a case in which it has been fully briefed.

[4] Tyson cites the District of Columbia high court to support her proposition that the legal protections afforded to children should extend to minor adoptees who have become adults. (Citing *In re G.D.L.*, 223 A.3d 100 (D.C. 2020).) That case is not helpful because the District of Columbia's unsealing statute is significantly different from Utah's. The D.C. statute provides that adoption records may only be unsealed "when the court is satisfied that the welfare of the child will . . . be promoted or protected." D.C. CODE § 16-311.

of when the proceedings occur. Tyson further argues that because "the best interests of the child are paramount[,] . . . [w]hen the interests of a child and an adult are in conflict, the conflict must be resolved in favor of the child." (Citing *In re Adoption of B.B.*, 2017 UT 59, ¶ 35 n.14, 417 P.3d 1.) Tyson contends we should categorically consider her interest, "as the adult adoptee, over the interest of her birth parents."

¶14 Even assuming, without deciding, that the child's best interest standard would otherwise apply to this proceeding, a basic canon of statutory interpretation defeats Tyson's argument. "When we interpret a statute, we start with the plain language of the provision, reading it in harmony with other statutes in the same chapter and related chapters." *Buck v. Utah State Tax Comm'n*, 2022 UT 11, ¶ 27, 506 P.3d 584 (cleaned up). "And where there is an inconsistency between related statutory provisions, the specific provision controls over the general." *Latham v. Off. of Recovery Servs.*, 2019 UT 51, ¶ 35, 448 P.3d 1241.

¶15 Here, Tyson wants us to promote the general over the specific. Section 78B-6-102(1) speaks about the "intent and desire of the Legislature" generally regarding adoptions, in that "in every adoption the best interest of the child should govern." Section 78B-6-141(3)(c) speaks directly to the issue presented here—what a petitioner must show to unseal adoption records. We presume that the Legislature intended the more specific provision to control over the general statement. Therefore, the district court did not err when it applied the good cause standard instead of examining what was in Tyson's best interest.

## II. THE DISTRICT COURT ERRED WHEN IT RELIED ON THE LEGISLATURE'S DECISION TO SEAL ADOPTION RECORDS FOR ONE HUNDRED YEARS TO DERIVE THE MEANING OF "GOOD CAUSE"

¶16 The district court concluded that a desire to obtain health information "unrelated to a specific medical condition" was categorically insufficient to make a good cause showing under section 78B-6-141(3)(c). The court relied on what it perceived as the Legislature's strong emphasis on privacy in adoption statutes to reach that conclusion. Tyson's desire to provide family medical history to her doctors regarding "menopause, high blood pressure and/or stroke" did not, in the court's eyes, constitute good cause to unseal her adoption records.

¶17   Tyson challenges the district court's definition of good cause. She argues that the privacy concerns the Legislature addresses lose their potency over time. Tyson claims her birth mother has enjoyed over forty years of privacy and that affording her further confidentiality cannot outweigh Tyson's desire to know her family medical history. Specifically, Tyson states that the only reason the Legislature protects a birth mother's privacy is to assure "the permanence of an adoptive placement." (Quoting UTAH CODE § 78B-6-102(5)(b).) Tyson argues that "once the Adoptee is an adult, there is no other interest in protecting the privacy of the mother and/or adoptee" because permanence has been achieved. In other words, "once the adoptee has become an adult, the legislative intent has been met and satisfied." So, according to Tyson, "[t]he interest of Adult Adoptee[s] [like Tyson] should outweigh whatever interest the [S]tate has in protecting . . . [the] privacy of the mother from an Adult Adoptee."

¶18   Utah Code section 78B-6-141(3)(c) states that an adoption petition and all other documents filed in connection with a petition for adoption "may only be open to inspection and copying . . . upon order of the court expressly permitting inspection or copying, after good cause has been shown." When it applied this provision to Tyson's petition, the district court stated that good cause required Tyson to show "something more than a desire to obtain health or genetic or social information unrelated to a specific medical condition." The court further reasoned that "if this was all that was required to show good cause, the Utah Legislature's policy determination that adoption records should be sealed for 100 years would be severely undermined." In essence, the court concluded that a desire to see one's medical record unrelated to a specific medical condition could not constitute good cause as a matter of law because it would weaken the privacy protections the statute affords to birth parents.

¶19   The Legislature did not define good cause in the context of section 78B-6-141(3)(c). This stands in contrast to other statutory provisions where the Legislature makes clear what it intends good cause to mean. For example, in Utah Code section 32B-14-102(3), the Legislature tells us that good cause equates to "the material failure by a supplier or a wholesaler to comply with an essential, reasonable, and lawful requirement imposed by a distributorship agreement if the failure occurs after the supplier or wholesaler acting in good faith provides notice of deficiency and an opportunity to correct."

¶20 At times, the Legislature has granted courts broad discretion by not defining good cause, only to add a definition after it sees how the courts have applied the standard. We noted in *State v. Ruiz* that, under a prior version of the plea withdrawal statute, judges "had broad discretion to determine the scope of circumstances that constituted 'good cause' and warranted withdrawal of a plea." 2012 UT 29, ¶ 31, 282 P.3d 998. But we also noted that the Legislature had amended the statute so that "judges may now grant a motion to withdraw *only* when they determine that a defendant's plea was not knowingly and voluntarily entered." *Id.* ¶ 32.

¶21 When a court deals with an undefined good cause standard, it has discretion to look to the facts and arguments presented to decide the question. Although it deals with a rule and not a statute, *Reisbeck v. HCA Health Services of Utah, Inc.* is instructive. *See* 2000 UT 48, ¶¶ 5–15, 2 P.3d 447. The appellant in *Reisbeck* failed to file her notice of appeal within the thirty days that Utah Rule of Appellate Procedure 4(a) requires and sought a discretionary extension from the trial court for "good cause" under Utah Rule of Appellate Procedure 4(e). *Id.* ¶¶ 5, 7. We refused to "establish any specific criteria for determining good cause" because "the assessment of the justifications offered by a moving party will remain highly fact-intensive, and because any given justification may entail aspects both within and beyond the moving party's control." *Id.* ¶¶ 14–15 (cleaned up). That is, an undefined good cause standard provides courts with discretion to consider the merits of individual cases.

¶22 Here, the district court attempted to breathe a more specific meaning into the phrase "good cause." Although it is understandable that the court would want more guidance than the statute provides, it interpreted the statute in a fashion that rewrote the law. The district court opined that good cause must mean "something more than a desire to obtain health or genetic or social information unrelated to a specific medical condition of [Tyson]." The court reasoned that to require less would "severely undermine[]" the "Legislature's policy determination that adoption records should be sealed for 100 years."

¶23 But the statute already balances the policy determination that records be sealed for one hundred years against a petitioner's desire to see those records. The Legislature resolved the question of when a petitioner can have access to those records by stating that a petitioner can unseal those records whenever she can show a

court that good cause exists to do so. To impose additional requirements—such as more than a general desire to know one's medical history—is inconsistent with the statute's language. Stated differently, if the Legislature had wanted to impose a requirement that a petitioner point to something more than wanting to know her medical history, it could have put that in the statute. It did not, and it was error for the court to do so.

### III. THE DISTRICT COURT DID NOT CONSIDER THE REASONS FOR DISCLOSURE IN ITS RULE 107 DETERMINATION

¶24  The district court not only concluded that Tyson had failed to establish good cause under section 78B-6-141(3)(c), it also determined that she could not meet the showing Utah Rule of Civil Procedure 107(d) requires.

¶25  Rule 107 provides, in relevant part, that: (i) a petition to open adoption records "shall identify the type of information sought and shall state good cause for access"; (ii) if seeking "health, genetic or social information, the petition shall state why the health history, genetic history or social history of the Bureau of Vital Statistics is insufficient for the purpose"; and (iii) in its resolution of the petition, "[t]he court shall determine whether the petitioner has shown good cause and whether the reasons for disclosure outweigh the reasons for non-disclosure." [5] UTAH R. CIV. P. 107(b), (d).

¶26  Here, the district court ruled that Tyson's "reasons for wanting access to the adoption records" did not "outweigh her birth mother's interest in privacy." But instead of balancing both interests under rule 107, the court focused solely on the birth mother's privacy interests. The court did not consider the reasons for disclosure. This is likely because the court had already discounted Tyson's desire to see her adoption records when it interpreted "good cause." In other words, once the court determined that Tyson could not show good cause under section

---

[5] At first blush, Utah Rule of Civil Procedure 107 appears to smear some extra-textual gloss on the statute when it requires a petitioner to state why she cannot get medical information from the Bureau of Vital Statistics, and when it instructs a court to assess whether the "reasons for disclosure outweigh the reasons for non-disclosure." Tyson does not challenge rule 107 and we will leave that question for another case.

78B-6-141(3)(c), it may have concluded that it had nothing to put on the disclosure side of the scale when the court balanced disclosure against non-disclosure.

¶27   We remand to permit the district court to evaluate Tyson's petition under a correct interpretation of section 78B-6-141(3)(c) and to conduct a rule 107 balancing that gives weight to both the birth mother's privacy interests and Tyson's reasons for wanting to see her adoption records.

————————